UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL ELLIOT #236879,   Case No. 2:18-cv-0085

        Plaintiff,   Hon. Robert J. Jonker
                                            Chief U.S. District Judge
   v.

KEITH SNYDER,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

State prisoner Michael Elliot filed this lawsuit on August 8, 2018. Elliot says that while he was held in administrative segregation at Baraga Correctional Facility (AMF) from 2016 to 2018, Chaplin Keith Snyder, a Michigan Department of Corrections (MDOC) employee, prohibited him from smudging. Elliot says that smudging, which is the burning of tobacco, is part of Native American religious observance and prayer.

Elliot alleges violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C., § 2000c-1, *et seq*., and of the First Amendment of the U.S. Constitution. Elliot's constitutional claims are filed pursuant to 42 U.S.C. § 1983. Elliot's complaint states that he is suing Snyder because Snyder misinterpreted MDOC policy. Elliot's complaint does not take issue with the underlying MDOC policies. Elliot sues Snyder in his official and individual

1

capacities. He seeks a declaratory judgment, money damages plus costs and fees, and other relief that the Court may deem just, proper and equitable. His complaint does not specifically request injunctive relief.

Chaplin Snyder is the only defendant remaining in this case. He has filed a motion for summary judgment. Snyder argues (1) that Elliot's RLUIPA claim is impermissible because Elliot failed to request injunctive relief, (2) that Elliot's Section 1983 claims against Snyder in Snyder's official capacity are barred by the doctrine of sovereign immunity, (3) that Elliot has failed to show that Snyder was personally involved in the deprivation of his constitutional rights, and (4) if Elliot shows that Snyder was personally involved, then Elliot's claims against Snyder in his individual capacity are barred by the doctrine of qualified immunity. (ECF No. 38, PageID.167.)

In response, Elliot argues that (1) the relief he requested in his complaint should be interpreted as containing a request for injunctive relief, (2) Snyder is not entitled to Sovereign immunity because Elliot requested declaratory relief, and (3) the claims against Snyder in Snyder's individual capacity should proceed because Snyder was personally involved in the deprivation of Elliot's constitutional rights and because the claims are not barred by the doctrine of qualified immunity. (ECF No. 39-1, PageID.279-307.)

In reply, Snyder argues that he did not violate Elliot's constitutional rights. (ECF No. 41, PageID.354.) In support of his argument, Snyder's directs the Court's attention to the prison's policies and Elliot's conduct.

The undersigned has reviewed the pleadings and respectfully recommends that Elliot's case be dismissed for several reasons. First and foremost, the prohibition that Elliot attacks in this lawsuit – a ban on smudging by individuals in their cells – has been found to be constitutional by several courts, including this one. And, indeed, Elliot has failed to identify a court case where this type of regulation was struck down. As a result, Snyder is entitled to qualified immunity. In addition, different parts of his lawsuit should be dismissed for narrower issues. His RLUIPA claim should be dismissed because (1) he failed to request injunctive relief in his complaint, and (2) even if he had, the circumstances have changed and his claim is now moot. In addition, Elliot's Section 1983 claims against Snyder in his official capacity should be dismissed due to sovereign immunity. Finally, Snyder is entitled to qualified immunity as to the claims against him in his individual capacity.

## II.     Constitutionality of Prohibition

The Court will begin its analysis with two points of clarification. First, throughout his filings, Elliot conflates the term "smudging" with the conventional understanding of prayer. (*See, e.g.,* ECF No. 39, PageID.275 (asserting that Plaintiff was not allowed "to pray while in segregation"); ECF No. 39-1, PageID.287 (Plaintiff states that "in order to pray it is necessary (for Plaintiff) to burn tobacco by offering it along with (his) thoughts, feelings, and words to the sacred fire so that it will be transformed into smoke and rise to the Great Spirit (God)") (parentheticals in original).) As a result, Elliot equates the denial of his ability to burn tobacco in his cell with a denial of the right to pray. (*Id.*, PageID.294-295.) This Court has

previously defined "smudging" as "a Native American religious practice wherein persons rub themselves with a smoldering mixture of tobacco, cedar, sage, and sweet grass." *LaPine v. Vilgos*, No. 2:09-CV-214, 2012 WL 5989647, at *1 (W.D. Mich. Nov. 30, 2012); *Dayson v. Caruso*, No. 2:12-CV-455, 2013 WL 1857445, at *4 (W.D. Mich. May 2, 2013) (defining smudging as "the ceremonial practice of burning sacred herbs to 'remove[ ] negative emotions/energy and install[ ] positive emotions/energy'") (quoting plaintiff's complaint). Other courts have applied similar definitions. *See, e.g., Tart v. Young*, 168 F. Supp. 2d 590, 592 (W.D. Va. 2001) (defining smudging as "a purification before prayer through the burning of sweet grass and other herbs"). Elliot may not share this definition. But it is clear from the pleadings, that the prohibition at issue focuses on the burning of materials within a prison cell. Nothing in the pleadings indicates that Chaplain Snyder or the MDOC prevented Elliot from engaging in prayer as it is conventionally defined.[1]

Second, a review of the parties' pleadings reflects a departure from the narrow factual allegations in Elliot's complaint. The parties address whether Elliot suffered on-going constitutional injury after he was released into general population. (*See* ECF No.39-1, PageID.292; *see also* ECF No. 41, PageID.355-358.) A review of Elliot's complaint shows that his claims are limited to a prohibition on burning tobacco in his

---

[1] *See* THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, https://www.ahdictionary.com/word/search.html?q=prayer (last visited May 8, 2020) (defining prayer as "[a] reverent petition made to God, a god, or another object of worship").

4

cell in administrative segregation. The key parts of Elliot's complaint are shown below.

> 3. As I have been taught by my Native American Religious elders and sincerely believe, in order to pray it is necessary for me to burn tobacco by offering it along with my thoughts, feelings and words to the sacred fire so it will be transformed into smoke and rise to the Great Spirit (God). It is also necessary that prior to prayer I purify my body with sage, cedar and sweetgrass smoke to respectfully and safely enter the sacred space of prayer where I am in contact with the power of the Great Spirit.
>
> 4. On 7-7-16, after placing a purchase order for a medicine bag and sacred herbs to purify myself and use for prayer, I was told by my unit counselor Jason F. Bessner (PC)
>
> that Keith Snyder (chaplain) told him I am not allowed to smudge or pray or burn any herbs for prayer while in segregation pursuant to a memorandum about tobacco use by prisoners which said prisoners are not allowed to continue individual smudging. (See Attachment A.)

> 5. Prisoners in general population are allowed to smudge and pray during weekly Native American Religious group meetings and this is done in a lawn area between the Educational and Health Service buildings. Prisoners housed in Segregation (as I am currently and have been for over four years already) are not allowed to attend Religious group meetings and no other arrangements are allowed for prisoners in segregation who believe in Native American Religious teachings or practices to pray.

(ECF No. 1, PageID.5-6.)

It is clear from the complaint, that Elliot's lawsuit is based on restrictions imposed on him as a result of his confinement in a segregation unit. In fact, as shown above in paragraph 5 of his complaint, he notes that he wrote the complaint while in segregation. Accordingly, the undersigned will restrict the analysis to prohibitions that applied to Elliot while he was in segregation.

To establish a cognizable RULIPA claim, Elliot must show (1) that he possesses a sincerely held religious belief, and (2) that the prison's policy substantially burdens that sincerely held religious belief. *See Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014). If established, Elliot's claim will fail if Snyder can show that the prison policy (1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest. 42 U.S.C. § 2000cc-1(a).

To establish a cognizable First Amendment free exercise claim, Elliot must show (1) that he possesses a sincerely held religious belief, and (2) that the

6

government's action substantially burdens Elliot's sincerely held belief. *See Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010). If established, the claims will fail if Snyder can establish:

> First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it. If not, the regulation is unconstitutional, and the other factors do not matter. Unlike the first factor, the remaining factors are considerations that must be balanced together: (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimus cost to valid penological interests.

*Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir.1999) (citations and internal quotation marks omitted). These factors are drawn from *Turner v. Safley*, 482 U.S. 78, 89 (1987), and are commonly known as the *Safley* factors.

In his complaint, Elliot states that he is challenging Snyder's misinterpretation of MDOC policies and a related memo. (ECF No. 1, PageID.6.) Snyder contends that he only implemented MDOC's policies, which prevent prisoners from burning anything in their cells and prevent prisoners in administrative segregation from participating in group activities. (ECF No. 38-4, PageID.222-223.) Both parties direct the Court's attention to a patchwork of MDOC's policies that govern whether NATW prisoners may burn tobacco while held in administrative segregation.

7

First, MDOC PD 01.03.140 ¶ I, which is shown below, generally prohibits smoking in MDOC facilities, but refers to PD 05.03.150 for an exception for group religious ceremonies.

> POSSESSION OF TOBACCO PRODUCTS
>
> OFFENDERS
>
> I. Offenders are prohibited from possessing tobacco products except in areas designated by the Warden or TRRP facility Supervisor for group religious ceremonies or activities conducted pursuant to PD 05.03.150 "Religious Beliefs and Practices of Prisoners".

(ECF No. 38-4, PageID.228 (MDOC PD 01.03.140, ¶ I).)

MDOC PD 05.03.150, ¶ X also restricts the possession and use of lighters and related materials to group religious ceremonies. Paragraph X provides as follows:

> X. A prisoner shall not possess or have control over candles, candle holders, lighters, or any incendiary device used during group religious services or activities. These items must remain under control of staff or volunteer clergy at all times while in use. In addition, there must be in-room staff supervision of group religious services or activities whenever a candle is used.

(ECF No. 38-4, PageID.234 (MDOC PD 05.03.150, ¶ X).)

Policy Directive 04.05.120, however, prohibits prisoners in segregation from participating in group religious ceremonies. Paragraph W of this PD is shown below:

> W. In addition to the items and privileges identified in Paragraph V, a prisoner housed in an administrative segregation unit shall be permitted all of the following:
>
> 1. Recreation, educational programming, and religious programming to the extent they are administratively feasible and can be safely afforded. Such privileges shall not be provided in a group setting.

(ECF No. 38-5, PageID.259 (PD 04.05.120, ¶ W).)

As explained in Paragraph L of this PD, prisoners end up in administrative segregation when they cannot be incarcerated in the general population of prisoners.

8

> **ADMINISTRATIVE SEGREGATION**
>
> L. Administrative segregation is the most restrictive level of security classification. A
>
> ---
>
> Case 2:18-cv-00085-RJJ-MV ECF No. 38-5 filed 01/13/20 PageID.256 Page 4 of 15
>
> | DOCUMENT TYPE | EFFECTIVE DATE | NUMBER | |
> |---|---|---|---|
> | POLICY DIRECTIVE | 09/27/2010 | 04.05.120 | PAGE 3 OF 12 |
>
> prisoner may be classified to administrative segregation only for the following reasons:
>
> 1. The prisoner demonstrates an inability to be managed with general population privileges.
> 2. The prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility.
> 3. The prisoner is a serious escape risk.

(ECF No. 38-5, PageID.255-256 (PD 04.05.120, ¶ L).)

Nevertheless, the MDOC issued a memorandum that specifically prohibits individual smudging and further restricted the possession of lighters and related materials within MDOC facilities. The memorandum provided as follows:

> Due to the restrictions on matches, Native American Traditional Ways (NATW) prisoners will no longer be permitted to smudge individually with sweet grass or other medicines.
>
> As stated in PD 01.03.140, Paragraph I, NATW prisoners may be in possession of tobacco only in areas designated by the Warden for the sole purpose of conducting a group ceremony. The chaplain will distribute a reasonable quantity of tobacco necessary for the ceremony, light any medicine used in a smudge, and supervise the ceremony. Tobacco may not be distributed to individual NATW group members for their medicine bags, or for any other reason. During a volunteer led pipe ceremony, the pipe may be passed among the participants.
>
> Also, a NATW Spiritual Leader volunteer is permitted to bring into a facility a "reasonable quantity" of tobacco for the purpose of conducting the religious ceremony in which tobacco is traditionally used. All tobacco brought into the facility by the NATW Spiritual Leader volunteer must be used during the ceremony.
>
> NATW medicine tobacco shall be held by the chaplain in a secure location, under his/her control.

(ECF No. 38-4, PageID.249.)

9

Based on the above policies provided in the record, the undersigned finds no difference between the prohibition that Chaplain Snyder enforced and the provisions of the policy directives and the memo cited by the parties. It is clear that MDOC policy allows smudging only in MDOC group religious ceremonies that are overseen by MDOC personnel. Further, it is clear that prisoners in segregation are barred from participating in group religious ceremonies. Indeed, Elliot offers no alternative interpretation of these policies that would allow him to smudge individually, in his cell or elsewhere, while remaining in compliance with these regulations.

Several courts have been presented with First Amendment free exercise claims that challenged similar policies. These courts agree that these policies survive free exercise challenges because the policies are rationally related to a legitimate penological interests. In *Dayson v. Caruso*, No. 2:12-cv-455, 2013 WL 1857445 (W.D. Mich. May 2, 2013), this Court considered a challenge the same MDOC policy at issue here. The plaintiff in *Dayson* claimed that a prohibition on smudging in his cell substantially burdened his First Amendment right to freely exercise his religion. This Court concluded that this prohibition was constitutional, reasoning as follows:

> [A]llowing prisoners to smudge in their cells would pose a serious threat to the safety and well-being of other prisoners and staff, both in terms of fire danger and the negative health consequences of being of exposed to tobacco smoke. Therefore, *the policy of not allowing Native American prisoners to smudge in their cells does not violate the First Amendment. See Tart v. Young,* 168 F.Supp.2d 590, 593 (W.D.Va.2001) (prison policy prohibiting inmate from "smudging" with herbs did not violate inmate's rights under the Free Exercise Clause).

10

*Dayson*, 2013 WL at *5 (emphasis added).

In *Tart*, which this Court cited in *Dayson*, a prisoner who was not permitted to attend NATW group services challenged the prison's policy that prevent him from smudging individually. *Tart*, 168 F.Supp.2d 590. After applying the *O'Lone* test,[2] the court determined that the policy was valid because it did not violate the prisoner's First Amendment rights. *Id* at 593.

*LaPine v. Vilgos*, which is cited above, was a retaliation case. But, this Court noted that smudging had set off prison fire alarms at an MDOC facility and that smudging "was also a statewide environmental concern for the MDOC because of its degradation of prison air quality." 2012 WL 5989647 at *1.

The Eighth Circuit and District of Minnesota have also found that policies limiting a prisoner's right to burn tobacco and other herbs were valid and did not violate the First Amendment. The Eighth Circuit stated that if the policy "imposed a substantial burden, we find that the prison's safety and security concerns were sufficient to ban these activities indoors." *Hodgson v. Fabian*, 378 F. App'x 592, 593-94 (8th Cir. 2010). And the district court found "that the policy barring residents of

---

[2] In *O'Lone*, the Court held that a prison regulation may not restrict an inmate's Free Exercise rights unless the restriction is reasonably related to a legitimate penological interest. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987). The *O'Lone* Court identified several factors relevant to this reasonableness determination: (1) a regulation must have a logical connection to legitimate governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates rights should not severely impact other inmates, prison officials and allocation of prison resources generally. *Id* at 350–53.

11

the Segregation Unit from participating in a smudging or pipe ceremony in their cells is supported by the legitimate need to prevent inmates from" engaging in nefarious activity. *Wickner v. Symmes*, No. CIV 05-2664 DWF/RLE, 2007 WL 426795, at *5 (D. Minn. Feb. 2, 2007).

Following the precedent of this district and its fellow courts, the undersigned concludes that the prohibition that Elliot challenges, whether viewed as an MDOC policy or an interpretation of an MDOC by Snyder, is valid.

### III.  RLUIPA Claim Should be Dismissed on Other Grounds

Although, the undersigned's recommendation regarding the validity of the prohibition at issue in this case would support a recommendation that the Court grant Snyder's motion, the undersigned wishes to address other aspects of Snyder's motion.

Prisoners suing under RULIPA may only seek injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011) (citing 42 USCA § 2000cc-2). Snyder argues that Elliot's RULIPA claim should be dismissed because Elliot failed to request injunctive relief.  (ECF No. 38, PageID.177-178.)  And alternatively, if Elliot requested injunctive relief, the request became moot when he was released in general population. (*Id.*, PageID.178-179.) Elliot disagrees with both arguments. He argues that his complaint should be construed to include a request for injunctive relief and argues that his injury is on-going. (ECF No. 39-1, PageID.284-290.) The undersigned agrees with Defendant Snyder on both points.

Elliot argues that because only injunctive relief is permitted under RULIPA and because he included a specific line of boilerplate language, he requested injunctive relief. (*See* ECF No. 39-1, PageID.285.) Attached below is the boilerplate language that allegedly establishes Elliot's request for injunctive relief. (*See* ECF No. 39-1, PageID.285.)

> Relief
>
> State briefly and precisely what you want the court to do for you.
>
> WHEREFORE, Plaintiff respectfully prays that this Court will enter judgment granting Plaintiff:
>
> 1. A declaratory judgment that the Defendants acts, described herein violate Plaintiff's rights under the US Constitution.
> 2. Compensatory damages in the amount of $75,000.00, or an amount the Court deems just, to Plaintiff from each Defendant who individually violated Plaintiff's constitutional rights.
> 3. Punitive damages in the amount of $75,000.00, or an amount the Court deems just, to Plaintiff from each Defendant who individually violated Plaintiff's constitutional rights.
> 4. Trial by jury on all issues triable by jury.
> 5. Plaintiff's cost of this suit.
> 6. Attorney fees of this suit.
> 7. Such other relief as this Court may deem just, proper and equitable.

(ECF No. 1, PageID.8.)

Line 7, shown above, does not constitute a sufficient statement of the relief requested. In *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 558 (6th Cir. 2017), the plaintiff argued that he requested injunctive relief and pointed to boilerplate language that read, "such other and further relief to which . . . Crosby may show himself justly entitled." *Id*. The Sixth Circuit declined to adopt such construction because it found that the plaintiff "specifically requested compensatory damages, punitive damages, and attorney's fees in his complaint, without ever mentioning injunctive relief" and because he later omitted a specific claim for injunctive relief in his amended complaint.  *Id*.

The district court in *Silitonga v. Kentucky State Univ.*, No. 3:16-CV-00029-GFVT, 2018 WL 3236055 (E.D. Ky. June 30, 2018) also declined to construe

boilerplate language that specifically mentioned injunctive relief as a request for injunctive relief. *Silitonga*, 2018 WL at *4. The court explained that although the boilerplate was more specific than in *Crosby*, 863 F.3d 545, the court held that the plaintiff "fail[ed] to articulate with specificity what injunctive relief they desire. Therefore, the Court construes the Complaint to request only civil monetary damages." *Id.*

Here, Elliot failed to state that he wanted injunctive relief. Without any request for injunctive relief or any description of what the injunctive relief might entail, the undersigned concludes that Elliot failed to request injunctive relief.

Even if Elliot did articulate a request for injunctive relief in his complaint, the undersigned concludes that this request is now moot. Snyder's mootness argument implicates Elliot's Article III standing. Recently, the United States Supreme Court held that "[u]nder settled law, we may dismiss the case for that reason only if 'it is impossible for a court to grant any effectual relief whatever' to [the plaintiff] assuming it prevails." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1660 (2019) (quoting *Chafin v. Chafin*, 568 U. S. 165, 172 (2013)).

Although the parties discussed at length whether Elliot's constitutional rights were still being violated after he was released into general population, Elliot's complaint was based solely on the prohibition of Elliot's ability to burn tobacco while he was incarcerated in administrative segregation.

By Elliot's own construction, his RULIPA claim is limited to his stay in administrative segregation and Snyder's interpretation and application of MDOC

14

policies to him specifically. Neither party disputes that Elliot has been released into general population. (*See* ECF No. 38, PageID.178; ECF No. 39-1, PageID.286-287.) As a result, the Court concludes that Elliot's request for injunctive relief is moot.

For these additional reasons, the undersigned respectfully recommends that the Court grant Snyder's motion for summary judgment regarding Elliot's RULIPA claim.

### IV. Elliot's § 1983 Claims Against Snyder in His Official Capacity

The Supreme Court has held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

> A suit against a state official in his or her official capacity for damages cannot be maintained pursuant to § 1983 because that official has Eleventh Amendment immunity. This is true because "a suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office." As such, a suit against a state official in his or her official capacity is no different than a suit against the state.

*Clark v. Chillicothe Corr. Inst.*, No. 2:19-CV-954, 2020 WL 1227224, at *3 (S.D. Ohio Mar. 13, 2020) (citations omitted).

The Sixth Circuit, in interpreting *Will*, has held "that plaintiffs seeking damages under § 1983 [must] set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state officials. *Wells v. Brown*, 891 F.2d 591, 592 (6th Cir. 1989). Here,

Elliot seeks money damages, costs and fees from Snyder in his official capacity. This part of Elliot's suit is barred by sovereign immunity.[3]

## V. Qualified Immunity

Snyder argues that the doctrine of qualified immunity bars both of Elliot's claims against him in his individual capacity. (ECF No. 38, PageID.188-191.) Specifically, Snyder asserts that the doctrine applies to him because qualified immunity extends to "a prison official who relies on a facially valid regulation unless he knows or should know that the regulation violates a well established constitutional right consisting of the particular act" that he prohibits. (*Id.* (quoting *Wolfel v. Morris*, 972 F.2d 712, 719-20 (6th Cir. 1992)).) In response, Elliot argues (1) that *Wolfel* is distinguishable from this matter, (2) that Snyder's arguments contradict each other, and (3) that Snyder's claim that he would not violate Elliot's constitutional rights is contradicted by the record. (ECF No. 39-1, PageID.304-307.)

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cty.*, 534 F.3d

---

[3] "There are three exceptions to a State's sovereign immunity: (a) when the State has consented to suit; (b) when the exception first set forth in *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), applies; and (c) when Congress has properly abrogated a State's immunity." *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008). Only the second exception is potentially at issue here. "Under the *Ex parte Young* exception, a federal court can issue prospective injunctive and declaratory relief compelling a state official to comply with federal law." *Id.* But, as explained in Section III, Elliot is not entitled to prospective relief because his claim is now moot.

16

531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (1982)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, __ U.S. __, 137 S. Ct. 548, 551 (2017)

17

(internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305, 308 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

Elliot asserts a RULIPA claim and a First Amendment free exercise claims against Snyder because Snyder allegedly prevented Elliot from burning tobacco while in administrative segregation. (*See* ECF No. 1, PageID.1.) As explained above in Section II, this restriction appears to be valid and constitutional. In addition, Elliot has not shown that the right he seeks to protect was clearly established when the event occurred such that a reasonable officer would have known that his conduct violated it. Accordingly, the undersigned concludes that Chaplain Snyder is entitled to qualified immunity.

The undersigned respectfully recommends that the Court grant Snyder's motion for summary judgment (ECF No. 37). If the Court accepts this recommendation, then the case will be dismissed.

Dated:  May 13, 2020                    /s/ *Maarten Vermaat*
                                        MAARTEN VERMAAT
                                        U. S. MAGISTRATE JUDGE

18

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).